WILLIAM (SPARKY) MOSLEY v. THE STATE.

No. 23433. Delivered June 26, 1946.
Rehearing Denied October 23, 1946.

524

The opinion states the case.

*Taylor & Taylor*, of Temple, for appellant.

*Ernest S. Goens*, State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Appellant was convicted of the killing with malice of Paul Humphrey, Jr., and assessed a penalty of fifty years in the penitentiary, and he appeals.

There is practically but one question presented to us in this appeal, and such relates to the charge of the court.

The facts show that on the night of the homicide, appellant and his wife, among others, were present in a club in Belton, in a place upstairs where beer was sold. That appellant and his wife had some disagreement which resulted in the wife slapping appellant and knocking his hat off. Appellant's wife was drinking rather heavily, and became so noisy that the proprietor of the club refused to sell her any more beer, and he eventually got the wife and husband separated, and then desired to have the wife leave the club. While debating whether to inform the officers of the woman's condition and request her removal, the deceased either was requested or volunteered to take her away from this club, and these two and a seventeen-year-old boy started down the stairs toward the street. Soon thereafter appellant was seen to start down such stairs, and was taking something out of his pocket. A State's witness testified that at the bottom of the stairway appellant came up and had some conversation with the deceased about the wife; that the deceased attempted to argue with appellant who cut at this witness, who told deceased to run, that appellant had a knife; that deceased ran, begging appellant not to cut him; that appellant repeated the statement ,"I am going to kill you"; that appellant followed deceased, striking at him; that deceased fell in the street, and was struck by appellant; that he got up and ran around some parked cars, and was again struck by appellant; that appellant pursued deceased from 150 to 175 feet, deceased making no attempt to strike appellant while fleeing. An officer, who was present, finally caught appellant and obtained the bloody knife. Deceased was taken to a hospital and died in about forty minutes from two fatal stab wounds.

Appellant's theory of the homicide differs slightly from that of the State. He contends that while the drinking was in progress in the club, that deceased placed his hand on his wife's shoulder, and upon a request, he took his hand down. That when he saw his wife, who had been drinking, and deceased going down the stairs together it hurt and humiliated him, and he started down after them; that when he reached the bottom of the stairs deceased had his arm around the wife, and upon appellant asking where she (the wife) was going, the deceased said, "What the hell do you care," and struck appellant "right in the nose." This "knocked him crazy, it was the rage that caused it, I went blank, that is all," and he claimed to know nothing else as to what happened until the officer had him by

the arm and was taking him to jail. He was excited, in a rage, and was scared and blank and remembered nothing of the killing after he was struck.

The State, in rebuttal, showed that there was no bruise on the nose or face, and no blood on his clothing or face.

In the light of these facts the careful trial court submitted to the jury murder with malice, murder without malice, and self-defense.

In submitting the law of murder without malice, the court charged as follows:

"You are instructed that murder without malice is a voluntary homicide committed without justification or excuse under the immediately influence of a sudden passion, arising from an adequate cause. 'An adequate cause' is such a cause as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render his mind incapable of cool reflection."

"Therefore, you are instructed that if you believe, or have a reasonable doubt thereof, from all the facts and circumstances in evidence before you herein, both those occurring at or about the time of the difficulty and those occurring at any time prior thereto, and the previous relationship, if any, between the deceased and the defendant, or his wife, or any one alone, that at the time of the difficulty the mind of the defendant Mosley was in such condition of sudden passion, arising from an adequate cause, as to render it incapable of cool reflection, and that such cause or causes, if any, were such as would commonly produce in the mind of a person of ordinary temper a degree of anger, rage, resentment or terror, sufficient to render his mind incapable of cool reflection, and that while in such condition of mind, if he was, the defendant Mosley committed the offense charged, *that* you cannot assess a penalty against him of more than five years confinement in the penitentiary."

Upon the law of self-defense, the court told the jury that appellant had the right to defend against real or apparent danger viewed solely from appellant's standpoint, and that in so acting appellant was in no event bound to retreat in order to avoid killing deceased, but might advance upon him and continue to cut until all danger, as viewed from his standpoint, was passed. And further, that if deceased had struck appellant with his fist, and appellant apprehended, as viewed from his

standpoint, that he was in danger of death or serious bodily injury, and he cut and killed deceased under such circumstances, that appellant would be justified in the killing and should be acquitted. The court further charging on self-defense, told the jury that although an attack by deceased did not cause appellant to fear death or serious bodily injury, still he had the right to defend against it if same threatened injury to his person, and that appellant could use all necessary and reasonable means at hand to defend himself, provided he used no more force than it reasonably appeared necessary, as viewed from his standpoint, to protect himself, save retreat, in order to avoid the necessity of killing deceased.

The careful trial judge thus applied the law as found in Article 1224, P. C., which justifies a killing and an acquittal therefor if the killing is brought within the provision of said article.

In paragraph 8 of the objections to the court's charge appellant excepts thereto "because it nowhere instructs the jury that if the defendant was justified in drawing his knife in defense of an unlawful and violent attack and continued to follow and cut the deceased after it appeared to him, viewed from his standpoint, that all danger to him was ended, and while under the influence of sudden passion, rage or resentment, aroused at the time of the difficulty or immediately prior thereto, or both, he would be guilty of no higher grade of offense than murder without malice, and defendant now requests the Court to so instruct the jury in appropriate language."

In paragraph 10 of appellant's objections to the charge he excepts because the court did not "charge the jury on murder without malice based upon excessive force." Appellant presented no special charges indicating his view of the kind of instruction he thought appropriate, but rested upon the objections indicated.

In support of his contention that the the court should have charged the jury that if appellant used more force than was necessary to repel an attack by deceased, appellant would be guilty of no higher grade of offense than murder without malice, appellant relies on cases cited in Sec. 2007, p. 1131, Branch's Ann. Tex. P. C., also Rose v. State, 186 S. W. 202; Moffatt v. State, 33 S. W. 344, and Hathcock v. State, 103 Tex. Cr. R. 518, 281 S. W. 859. It will be noted that all these cases were decided at a time when "manslaughter" was a substantive crime, and a conviction therefor would bar a further prosecution for mur-

der. This is no longer the law. The statutory grounds of adequate cause have been repealed, and murder without malice has now become a question of fact for the jury to determine, based upon whether the killing occurred under the immediate influence of sudden passion arising from a cause which would commonly produce in a person of ordinary temper a degree of anger, rage, resentment, or terror sufficient to render the mind incapable of cool reflection. This law was charged the jury pertinently in paragraphs 6 and 7 of the court's instructions. There could have been no misapprehension on the jury's part that if they found that appellant's mind was in a condition of sudden passion from any cause when he killed the deceased, and the circumstances would have brought about that state of mind in a person of ordinary temper, his punishment could not be more than five years in the penitentiary. If appellant's contention prevailed, this court would find itself announcing as a matter of law that although excessive force was used in repelling an attack that adequate cause existed. We think that under the law of murder as now found in our statute, the court would have no more authority to say that the presence of any particular thing was adequate cause than it would to say that the absence of some particular thing prevented adequate cause from operating. The views of the court regarding the question will be found clearly announced in Butler v. State, 121 Tex. Cr. R. 288, 51 S. W. (2d) 384; Hettich v. State, 130 Tex. Cr. R. 580, 95 S. W. (2d) 113; Weems v. State, 185 S. W. (2d) 431, and many other cases cited in those mentioned.

Being of the opinion that appellant's rights were amply protected under the instructions given, the judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

In his motion for rehearing, appellant insists that the repeal of statutory adequate cause under the old manslaughter statute did not repeal, change, or affect the excessive force rule, which he here urges should have been submitted to the jury, and by which his punishment would have been only for murder without malice.

As supporting this contention, he calls attention to the fact that the excessive force rule was never the creature of or demanded by statute, but was written into the law of manslaghter by the decisions of this court, and that therefore the repeal of

statutory, adequate cause reducing a killing to manslaughter did not and could not change that rule.

The authorities cited in our original opinion support appellant in his contention that the excessive force rule was the result of judicial interpretation of the crime of manslaughter by this court. Such also appears to be true of imperfect self-defense (Branch's P. C., Sec. 2008, Franklin v. State, 30 Texas Crim. App. 628, 18 S. W. 468; Nicks v. State, 46 Texas Crim. Rep., 241, 79 S. W. 35; Brown v. State, 54 Tex. Crim. Rep. 121, 126, 112 S. W. 80) ; of illegal arrest (Branch's P. C., Sec. 2006, Meuly v. State, 26 Texas Crim. App. 274, 9 S. W. 563; Mooney v. State, 65 S. W. 927; Earles v. State, 94 S. W. 466) ; of provoking the difficulty without an intent to kill (Branch's P. C., Sec. 2057, Young v. State, 41 Texas Crim. Rep. 446, 55 S. W. 331; Honeycutt v. State, 42 Texas Crim. Rep. 132, 57 S. W. 806; Halsford v. State, 53 Texas Crim. Rep. 45, 108 S. W. 381; Gray v. State, 61 Texas Crim. Rep. 454, 135 S. W. 1179) ; and of mutual combat (Branch's P. C. Sec. 1960, Delgado v. State, 34 Texas Crim. Rep. 159, 29 S. W. 1070; Stacey v. State, 33 S. W. 348; Reed v. State, 161 S. W. 97).

It must be remembered that the decisions announcing the rules stated were at a time when manslaughter was, by statute, an independent and substantive crime. Such is not now true, for with the enactment of our present murder statute, the statutory crime of manslaughter was repealed. Now, every unlawful killing—that is, intended killing—is murder, with punishment authorized to be fixed therefor from two years' confinement in the penitentiary to death, at the discretion of the jury. There are now no degrees of the crime of murder. Indeed, one convicted of murder which the jury found was committed without malice may, upon a re-trial, be convicted of murder with malice and a punishment fixed accordingly. Joubert v. State, 136 Tex. Cr. R. 219, 124 S. W. (2d) 368. Under our present murder statute, the question of murder with and without malice relates only to the punishment authorized to be inflicted.

Art. 1257c, P. C. governs the submission of the question of murder without malice. A compliance therewith by a trial court is all that is required. For a trial court now to pick out any particular fact or set of facts in the evidence and instruct the jury that if they believed such fact or facts the killing would— as a matter of law—be one without malice, would of necessity constitute a charge upon the weight of the evidence.

The jury are the sole judges of the facts constituting ade-

quate cause whereby an unlawful killing would be without malice.

In the instant case, the trial court fully presented the law of murder without malice, as required by Art. 1257c, P. C. This is all that the law required him to do, under the facts.

Appellant insists that the cases of Ely v. State, 139 Tex. Cr. R. 520, 141 S. W. (2d) 626, and Rodriquez v. State, 146 Tex. Cr. R. 206, 172 S. W. (2d) 502, support his contention and are at variance with the views here expressed. We did not so intend. If those cases are susceptible of being construed as supporting appellant's contention, they are hereby modified to comport with the views here expressed.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.