**Daniel Paul EDWARDS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45941.**

Court of Criminal Appeals of Texas.

May 16, 1973.

Will Gray, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, and Vic Pecorino, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder with malice. Punishment was assessed by the jury at twenty years.

Appellant was one of six persons jointly indicted for the shooting death of Moody Blanton in the Shadow Lights Lounge, in Houston, on January 19, 1970.[1] Prior to the shooting, co-defendant Grant and the deceased had been playing pool. An argument arose between the deceased and Grant. Grant left, and about thirty minutes later Grant returned to the lounge with appellant and the four other co-defendants. Appellant and his companions were identified by witnesses as having entered the lounge brandishing guns. A shot was fired into the head of the deceased, money was removed from his wallet, and appellant and the co-defendants departed. Appellant testified in his own behalf and denied having had a gun at the time in question and stated that he had not entered into any agreement to kill anybody or fight anybody.

Appellant contends the court erred in permitting the State to ask leading questions of a witness it had called and in not limiting the jury's consideration of this testimony for impeachment purposes.

The State called co-defendant Alexander as a rebuttal witness. Alexander testified that he went into the lounge alone and did not remember seeing appellant in the lounge. After the shooting, Alexander stated he returned to the car where he found appellant. The State claimed surprise, the jury was removed, and the prosecutor testified that he had talked to Alexander 20 or 25 minutes before he began his testimony. Alexander had said that after he observed a fight in the lounge, he came

---

1. Severance was granted upon appellant's motion.

back outside, and everyone armed themselves, including appellant. The court permitted the prosecutor to ask the witness leading questions and, in answer to questions about what he had told the prosecutor, Alexander denied that he had made statements to the prosecutor that appellant and the other co-defendants had armed themselves with guns, or that he had stated that they entered the lounge. The State did not offer any testimony in the presence of the jury that the witness had, in fact, made any such statements. Thus, Alexander's denial of having made such statements was not contradicted. Just as in Holbert v. State, Tex.Cr.App., 457 S.W.2d 286, the only incriminating statements came in the prosecutor's questions and not in the answers of the witness. In Holbert, it was stated:

"To constitute the impeachment of which the appellant complains, it would be necessary for the state to support the predicate laid by introducing evidence before the jury as to the prior statements of the witness Pratt. In the absence of such proof Pratt's denial of the making of such statements was not contradicted. Therefore, the matter of his impeachment is not presented." Holbert v. State, 457 S.W.2d 286, 289.

■ In the instant case, there is no affirmative showing of the witness's prior statements, and we find that the witness was not impeached. See Lopez v. State, 171 Tex.Cr.R. 552, 352 S.W.2d 106; cf. Henley v. State, Tex.Cr.App., 387 S.W.2d 877. It follows that the court was not in error in refusing to limit the testimony of the witness for impeachment purposes.

In appellant's third through sixth contentions, he complains of the trial court's failure to instruct the jury:

(1) To disregard testimony relating to prior acts and declarations of the alleged co-conspirators unless the jury believes the principals had previously formed a common intent and design to commit the offense.

(2) That if another killed the deceased upon an independent impulse and not in pursuance of an agreement with the defendant the jury should acquit.

(3) That if the defendant acted merely to break up a fight between others and not in pursuance of an agreement with the other alleged co-principals the jury should acquit.

(4) That even if the defendant entered into an agreement with the other alleged co-principals to commit a battery on the deceased, and that another on an independent impulse killed the deceased then defendant would be guilty of no higher offense than aggravated assault.

Appellant cites no authorities in support of the argument on these contentions, and he urges that his own testimony during the trial raised fact issues which are the subject of his objections to the charge. Appellant testified that he took Robert Carroll to the Shadow Lights Lounge in order that Carroll might pick up his car, and that when they arrived, James Colburn came out of the lounge and asked them to come inside to help break up a fight. Appellant stated that when he entered the club, he saw Alexander and Grant "scuffling" with the deceased, and he saw others holding guns. He immediately started to leave, and as he turned to go, he heard a gunshot. He testified he was only in the club for "a few seconds" and did not see who fired the shot. Appellant denied that he had entered into any preconceived idea to kill anybody, or to fight anybody or help anyone kill anyone.

The charge given by the court regarding the law of principals was requested by the appellant and reads as follows:

"All persons are principals who are guilty of acting together in the commission of an offense, and principals, whether jointly indicted or not, may be legally prosecuted and convicted as such, provided the evidence adduced against each clearly and satisfactorily establishes

that they acted together in the commission of an offense, regardless of the particular part performed by either or each.

"Where an offense has been committed, the true criterion for determining who are principals, is: Did the parties act together in pursuance of a common intent, and in pursuance of a previously formed design in which the minds of all united and concurred? If so, the law is that all are alike guilty, provided the offense was actually committed during the existence and in the execution of the common design and intent of all, whether in point of fact all were actually bodily present on the ground where the offense took place or not.

"If there was no such common design and intent of all, including the Defendant, to commit the offense, or if the offense, if any, was committed by one or more, acting independently of the Defendant in so doing and without participation by him in the design and intent to commit it, then the Defendant is not guilty, and if you have a reasonable doubt as to this issue, you must give the Defendant the benefit of the doubt and acquit him.

"Members of the Jury, you are instructed by the Court that the mere presence of a party at or near the scene of the commission of an offense does not make him a principal, and mere knowledge that an offense is about to be committed will not make the party a principal; nor will his knowledge that an offense is being committed, or has been committed, nor will his failure to give alarm, his silence or inaction, make him a principal. Now, therefore, unless you believe from the evidence beyond a reasonable doubt that Daniel Paul Edwards was present at the time of the alleged offense, if any, and that he knew both of the acts and of the intent of the persons committing said offense, if any, or unless you believe from the evidence beyond a reasonable doubt that the Defendant, Daniel Paul Edwards, was not present at the scene of the alleged offense but was engaged in carrying out his part of a previously conceived design therefore entered into with the others to commit the offense of murder upon Moody Blanton, and unless you believe from the evidence beyond a reasonable doubt that the Defendant did some overt act in connection with the persons who committed the said offense, if any, and that he had a guilty knowledge, and conspired and confederated with the persons who did commit said offense, if any, before the act was done then his mere presence at or near the scene of the alleged offense, if any, or his mere knowledge that such offense was about to be committed or had been committed, or his failure to give alarm, or his silence or inaction, would not make him a principal and you will acquit the Defendant."

Appellant's objections to the court's charge are directed to the failure of the court to instruct the jury on various aspects of common intent and agreement.

■ The charge requested by appellant and given by the court adequately presented these matters and protected the rights of appellant. See Bagley v. State, Tex. Cr.App., 425 S.W.2d 656; Walker v. State, 104 Tex.Cr.R. 26, 282 S.W. 245 (on Motion on Rehearing). No error is shown.

The judgment is affirmed.

Opinion approved by the Court.